Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The date of plaintiff's alleged injury is April 21, 1997.
3. On the date of the alleged injury plaintiff was an employee of the Defendant North Carolina State University.
4. The plaintiff's average weekly wage was $452.61.
5. Medical records from the following providers have been received as evidence:
a. Samuel Blackwell. M.D.
b. Leonard Nelson, M.D.
c. William G. Ferrell, M.D. (Raleigh Neurology Associates, P.A.)
d. Saleeby Chiropractic Centre.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was thirty-six years of age. At the time of his injury on April 21, 1997 he was employed by defendant North Carolina State University as a locksmith.
2. On April 21, 1997, plaintiff and a co-employee, Terry Ennis, were assigned the duty of installing a door closure at a residence hall at N.C. State University. Plaintiff was carrying a four-foot step ladder on his shoulder and other materials in his hand as he proceeded up a stairway. As plaintiff stepped on one of the steps, a metal plate, which was loose, made a loud noise and moved forward. Plaintiff lost his balance, twisted and fell over against a wall. Plaintiff immediately felt pain in his foot and leg.
3. Terry Ennis testified that he was with the plaintiff on April 21, 1997 and that he stepped on the same step that plaintiff described as causing him to lose his balance. Mr. Ennis testified that the metal tread on the step was loose and it did make a loud popping sound and moved up and down when he stepped on it. Mr. Ennis corroborated plaintiff's testimony that he fell up against the wall. However, the plaintiff is in a better position to know the sequence of events that led to his loss of balance. Defendant presented evidence that subsequent to plaintiff's injury it repaired the loose tread on the step that caused plaintiff to lose his balance.
4. Plaintiff completed the job assignment which lasted about 45 minutes and immediately thereafter reported his injury to his supervisor. Plaintiff decided against seeking medical treatment at the time of injury because he believed his condition would improve. However, his pain worsened as the day progressed. During the evening and night, he began to also experience tightness and discomfort in his back, shoulder and arm.
5. Plaintiff sought medical care after he left work on the day of his injury at Blue Ridge Primary Care. The doctor diagnosed foot pain and muscle strain. On the following day plaintiff could hardly move and he did not report to work. Two days later, on April 23, 1997, plaintiff returned to Dr. Blackwell who diagnosed foot pain and back pain and took plaintiff out of work until he could be seen by an orthopaedist.
6. Plaintiff reported his injury and how it happened on April 24, 1997, to Paula Barnes, who worked in defendant's Benefits Department. Plaintiff reported that he was experiencing foot, leg and back pain as a result of the incident on April 21, 1997. Plaintiff asked Ms. Barnes to refer him to an orthopeadist. Ms. Barnes did not believe plaintiff had described a compensable claim and after consultation with Key Risk Management, defendants' Third Party Administrator, plaintiff's claim was denied.
7. Dr. Blackwell referred plaintiff to Dr. Leonard Nelson at Raleigh Orthopaedic Clinic, P.A. Dr. Nelson diagnosed thoracic sprain/contusions. He recommended physical therapy and had an MRI done on June 21, 1997. The medical records of Dr. W.G. Ferrell indicate that the MRI showed small, broad-based left paracentral C6-C7 disc protrusion and the thoracic spine showed small, right paracentral disc herniation at T8-T9 and T10-T11. Surgery was not deemed to be necessary.
8. Plaintiff had pre-existing back problems which required surgery in 1995. Plaintiff's low back pain resolved after his lumbar laminectomy and he resumed normal activities. Plaintiff returned to work in October 1995 and occasionally missed a day from work due to back problems for which he received chiropractic treatment; however, plaintiff was able to do this job.
9. After his April 21, 1997 injury, Dr. Nelson released plaintiff to light duty work, four hours per day, with no lifting over ten pounds beginning May 26, 1997. Defendant advised plaintiff that no light duty work was available. Plaintiff was terminated from his employment on or about July 21, 1997.
10. Plaintiff was evaluated by Dr. William G. Ferrell, a neurologist on October 8, 1997. Dr. Ferrell found that plaintiff had soft tissue pains in the neck, back, arm and leg; prescribed pain medication and ordered electrodiagnostic studies. The results of these studies are not in evidence.
11. Plaintiff sustained an injury by accident on April 21, 1997, when he stepped on a loose metal tread which shifted, causing him to lose his balance, twist and fall up against a wall. This incident constituted an unlooked for and untoward event which was not expected or designed by plaintiff and which resulted in injury to plaintiff. Therefore, plaintiff sustained an injury by accident arising out of and in the course of his employment.
12. As a result of his injury by accident, plaintiff was totally incapable of working in any employment from April 22, 1997 through May 26, 1997. Thereafter, plaintiff was released to return to light duty work for four hours a day with lifting restrictions of ten pounds. Defendant would not provide plaintiff with light duty employment. Plaintiff was subsequently released to return to work on July 14, 1997 with restrictions of working four hours per day; standing and walking one to four hours, sitting one to three hours, driving one to three hours and lifting no more than five pounds.
13. Based upon a letter from Dr. Leonard D. Nelson, Jr., which was entered into evidence by stipulation of the parties, plaintiff reached maximum medical improvement by August 22, 1997 and has a ten percent (10%) impairment of his lumbar spine as a result of his on-the-job injury while working for defendant on April 21, 1997. Dr. Nelson had previously performed back surgery on the plaintiff and was in the best position to determine what portion of plaintiff's disability was related to his on-the-job injury.
14. No rating has been given to plaintiff's foot, however, plaintiff was still receiving treatment for his foot and other problems at the time of the hearing before the deputy commissioner. Plaintiff has not reached maximum medical improvement for his foot injury.
***********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSION OF LAW
1. On or about April 21, 1997, plaintiff sustained an injury by accident to his foot, leg, and back arising out of and in the course of his employment with defendant, resulting in disability. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's injury to his back on April 21, 1997 caused his left paracentral C6-C7 disc to protrude and a right paracentral disc herniation at T8-T9 and T10-T11.
3. As a result of his injury by accident or specific traumatic incident on April 21, 1997, plaintiff was totally incapable of earning wages in any employment from April 22, 1997 through May 26, 1997. Since May 26, 1997, plaintiff has been incapable of returning to his previous job. Plaintiff may have been able to engage in some part-time employment with accommodations made for his restrictions; however, defendant-employer refused to provide light duty or rehabilitative employment to plaintiff and has failed to show that jobs exist in the competitive marketplace that plaintiff can get considering his physical limitations caused by his injury. Therefore, plaintiff has been totally incapable of earning wages in the competitive marketplace since April 22, 1997 and is entitled to total disability compensation until he returns to work earning the same or greater wages or until further order of the Industrial Commission.
4. Plaintiff is entitled to all medical treatment which is reasonably required as a result of his compensable injury to effect a cure, provide relief or lessen his disability, including future medical treatment. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $301.74 per week, beginning April 22, 1997 and continuing until plaintiff returns to work earning the same or greater wages, or until further order of the Industrial Commission. Such amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel. Plaintiff's attorney shall receive 25% of all accrued compensation and thereafter every fourth check.
4. Defendant shall bear the costs of this proceeding.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ CHRISTOPHER SCOTT COMMISSIONER